UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

JULIE ANN B.,                                              Case No. 3:23-cv-01884-AR

        Plaintiff,                                    **OPINION AND ORDER**

    v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

        Defendant.

_____

**ARMISTEAD, Magistrate Judge**

In this judicial review of the Commissioner's final decision denying Social Security benefits, plaintiff Julie Ann B. (her last name omitted for privacy) challenges the Administrative Law Judge's (ALJ) chosen disability onset date, the evaluations of plaintiff's symptom allegations and the lay witness testimony of her mother, and the hypotheticals posed to the Vocational Expert (VE). The Commissioner argues that substantial evidence supports the ALJ's partially favorable finding that plaintiff became disabled on January 1, 2022, but was not

Page 1 – OPINION AND ORDER

disabled before that date. As discussed below, the Commissioner's decision is reversed, and this case is remanded for further proceedings consistent with this opinion.[1]

## ALJ'S DECISION

Plaintiff applied for Title II Disability Insurance Benefits (DIB) and Title XVI Supplemental Security Income (SSI) on April 23, 2018, alleging disability beginning on January 26, 2017. (Tr. 276-77, 278-82.) Her claims were first denied on December 19, 2018, and again upon reconsideration on July 16, 2019. (Tr. 147-51, 111-12.) The ALJ held a hearing on May 3, 2022. (Tr. 1076-1100.) Three supplemental hearings were held on June 6, 2022, June 14, 2022, and June 28, 2022. (Tr. 1064-73, 1016-61, 49-84.)

In denying plaintiff's applications, the ALJ followed the five-step sequential evaluation process.[2] At step one, the ALJ determined plaintiff had not engaged in substantial gainful activity since January 26, 2017, her alleged onset date. (Tr. 19.) At step two, the ALJ determined that since January 26, 2017, plaintiff had the severe impairments of cervical degenerative disc disease, migraine headaches, generalized anxiety disorder, and persistent depressive disorder. (Tr. 19.) At step three, the ALJ determined that plaintiff's impairments singly or in combination did not meet or medically equal the severity of any listed impairment since January 26, 2017. (Tr. 19.)

---

[1]  This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3), and all parties have consented to jurisdiction by magistrate judge under Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).

[2]  To determine a claimant's disability, the ALJ must apply a five-step evaluation. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the ALJ finds that a claimant is either disabled or not disabled at any step, the ALJ does not continue to the next step. *Id.*; *see also Parra v. Astrue*, 481 F.3d 742, 746–47 (9th Cir. 2007) (discussing the five-step evaluation in detail).

The ALJ determined that before January 1, 2022, the ALJ's chosen onset date, plaintiff had the residual functional capacity (RFC), 20 C.F.R. § 404.1545, to perform a reduced range of light work with the following limitations:

> [S]he could occasionally climb ramps and stairs; should not climb ladders, ropes, or scaffolds; could frequently balance, stoop, kneel, and crouch; could occasionally crawl; could frequently reach overhead bilaterally; should have no exposure to hazards (such as unprotected heights and exposed moving mechanical parts); should not operate heavy machinery; should not drive as a work function; has sufficient concentration, persistence, and pace to complete simple, routine tasks; and she should have no direct public interactions.

(Tr. 21.)

At step four, the ALJ determined that plaintiff has been unable to perform any past relevant work since January 26, 2017. (Tr. 27.) Given her age, education, work experience, and RFC, the ALJ found at step five that jobs exist in significant numbers in the national economy that plaintiff can perform, including such representative occupations as marker, routing clerk, and assembler of small parts. (Tr. 28-29.) Yet the ALJ also found that beginning on January 1, 2022, no jobs exist in significant numbers in the national economy that plaintiff could perform. (Tr. 29.) The ALJ concluded that plaintiff was not disabled before January 1, 2022, but "but became disabled on that date and has continued to be disabled through the date of this decision. Her disability is expected to last twelve months past the onset date." (Tr. 29.) The ALJ also noted that plaintiff was "not under a disability within the meaning of the Social Security Act at any time through September 30, 2021, the date last insured." (Tr. 29.)

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42

Page 3 – OPINION AND ORDER

U.S.C. § 405(g); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation and citation omitted). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).

## DISCUSSION

**A.**     ***Determination of Disability Onset Date***

Plaintiff argues that the ALJ's chosen onset date of January 1, 2022, is not supported by or consistent with the record and that her disability began on January 26, 2017. The court determines that the disability onset date was either arbitrarily determined or needs justification from the ALJ.

As stated above, the Social Security Administration's decision should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ford*, 950 F.3d at 1141. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. Substantial evidence supporting the ALJ's decision to set the disability onset date as January 1, 2022, is lacking.

"[I]n determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available . . . . [T]he established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record." *Armstrong v. Comm'r Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998) (omission and second alteration in original) (quoting Social Security Regulation (SSR) 83-20, 1983 WL 31249 (1983)). The ALJ is allowed to infer an onset date, but the regulations provide that the ALJ should call on

Page 4 – OPINION AND ORDER

the services of a medical advisor at the hearing whenever an inference is necessary. *Id*. Here, the ALJ did call a medical expert (ME), Dr. Debra Ann Pollack, to attend two administrative hearings to discuss plaintiff's neurological impairments and the timelines associated with her diagnoses. (*See* Tr. 1016-36, 49-72.) But the ALJ's written decision is without any meaningful discussion of how January 1, 2022, relates to plaintiff's onset of disability.

As discussed, the ALJ found that as of January 26, 2017, plaintiff suffered from the severe impairments of migraine headaches, cervical degenerative disc disease, generalized anxiety disorder, and depression. (Tr. 19.) Plaintiff first finds this conclusion to be at odds with the RFC for the period between January 26, 2017, and January 1, 2022, which has no limitations related to her migraines. (Pl. Br. at 12.) Plaintiff argues that the ALJ's only discussion of the migraines was in relation to step two, in finding that her migraines did not equal listing 11.02B. (Tr. 19-20 (providing no other explanation aside from the statement that "there is no evidence that [plaintiff]'s primary headache disorder medically equals a listing, either individually or in combination with another impairment").) Second, plaintiff contends that the record substantiates her complaints surrounding her cervical degenerative disc disease dating to 2017, and that the earlier RFC should have included limitations to "occasional handling and fingering" due to her extremity weakness from cerebral palsy. (Pl. Br. at 14.) Plaintiff argues the ALJ failed to explain why January 1, 2022, was the chosen onset date other than the reliance on the ME's testimony. (Pl. Br. at 14-15.)

Based on the record, there is no medical opinion that definitively attests to the disability onset date of January 1, 2022. The only medical opinion that alludes to such date is that of Dr. Pollock, who stated at the administrative hearing that based on an "exam in May 2022. . . [plaintiff] has quite a significant degree of limitations based on this exam." (Tr. 62.) The exam

Page 5 – OPINION AND ORDER

Dr. Pollock is referring to, however, is a physical exam regarding plaintiff's diagnosis of cerebral palsy. (*See* Tr. 1011-12.) Though Dr. Pollock stated that "[i]t is sort of curious that all of the sudden in May of 2022 there is lots of documentation about spasticity and none or very little earlier[,]" this date has nothing to do with plaintiff's migraines or the symptoms related to her cervical degenerative disc disease, the only two physical impairments the ALJ found to be severe. (Tr. 54.)

The ALJ's onset date seemingly results from her determination that plaintiff's condition and symptoms had worsened by the time of plaintiff's February 2022 MRI results. (Tr. 25, citing Tr. 631.) Because it is reasonable to infer the onset date happened before the February 2022 MRI, the ALJ determined:

> that [plaintiff]'s restrictions reasonably existed as of January of 2022, in part due to the MRI evidence in February of 2022 showing worsening degeneration in the claimant's cervical spine. The evidence of record does not support these limitations during the period prior to that date, as the claimant had normal EEG and brain MRI, physical examination results showing no strength or sensory and a normal gait, with her providers noting her reported symptoms did not match imaging.

(Tr. 25 (internal citations omitted).)

How the ALJ calculated that one month before the February 2022 MRI was an appropriate time frame is unclear, as the "normal EEG and brain MRI" she cites date back to February 15, 2018, and November 14, 2017. (*See* Tr. 434, 465, 469.) Therefore, it is unclear why the ALJ chose January 1, 2022, and the ALJ's onset date is inconsistent with the record, as the record reflects plaintiff's health conditions and their accompanying symptoms and limitations can be traced back well before January 2022. (*See* Tr. 487 ("Pt presents [as of February 5, 2019] with [cerebral palsy] with spasticity, weakness and pain that is impacting function (left sided

mainly impacted). She reports pain for ADLS involving overhead movements or lifting and fatigue and spasms with fine motor work. Her grip tested weak today (45# right, 40# left). She is currently seeing PT with limited success for shoulder/neck pain."); *see* Tr. 451 explaining plaintiff's 2017 brain MRI results as "[u]nchanged bilateral T2/flair hyperintense foci involving the centrum semiovale, *which may be seen in the setting of migraines*.")) The ALJ neither accounts for this in choosing the January 2022 onset date nor provides any explicit discussion of why plaintiff's "restrictions reasonably existed" a month prior, but not any other time prior. (Tr. 25.) The ALJ's determination of the disability onset date as January 1, 2022, thus lacks substantial evidence.

**B.**     *Plaintiff's Subjective Symptom Testimony*

Plaintiff argues that the ALJ erred by failing to provide clear and convincing reasons for discounting her subjective symptom testimony. At the administrative hearing on May 3, 2022, plaintiff said that increased seizure activity, migraines, and repetitive muscle strain from cerebral palsy stopped her from working at her part-time job. (Tr. 1085.) Often, she had to leave work early. Plaintiff experienced daily migraines and couldn't, because of her removed tailbone, sit for longer than 15 to 20 minutes. (Tr. 1086.) Balance issues limited her ability stand to about 30 minutes. (Tr. 1086.) Her pain made it difficult to concentrate, and her medications had many side effects, including fatigue and dizziness. (Tr. 1088.) She could do minimal amounts of laundry or dishes on her better days. (Tr. 1090.) On her bad days, two to three days each week, plaintiff had to spends a lot of time lying down in a dark room. (Tr. 1092.) She wore sunglasses indoors because bright lights worsen her migraines. (Tr. 1094.) At the supplemental hearing on June 28, 2022, plaintiff said that she needs help from her roommates to do basic daily tasks like washing her hair and shaving. (Tr. 76.) Her inability to pay explained gaps in treatment during the

Page 7 – OPINION AND ORDER

pandemic; she also did not want to expose her roommates or her elderly father to COVID-19. (Tr. 77-78.)

Determining the credibility of a claimant's testimony regarding subjective reports of pain or symptoms requires the ALJ to undertake a two-step process of analysis. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the alleged symptoms. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, if there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discounting the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015); 20 C.F.R. § 404.1529. The specific, clear and convincing standard is "the most demanding required in Social Security cases" and is "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015; *Trevizo*, 871 F.3d at 678-79. The "clear and convincing" standard requires an ALJ to "show [their] work" but, ultimately, the question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

The ALJ discounted plaintiff's symptom testimony because objective medical records did not support the level of physical limitations she alleged, and that plaintiff's mental health symptoms improved with treatment. Because the ALJ only used objective medical evidence to discount plaintiff's testimony regarding her physical impairments, the ALJ failed to provide permissible reasons to discount plaintiff's testimony.

\\\\\

\\\\\

Page 8 – OPINION AND ORDER

**1.**     *Inconsistency with Objective Medical Evidence*

Plaintiff argues that the ALJ cited "selective portions of the objective evidence" from January 26, 2017, until January 1, 2022, and failed to explain the inconsistency between plaintiff's allegations and the medical evidence with any specificity. (Pl. Br. at 17.)

To evaluate the intensity, persistence, and limiting effects of a claimant's symptoms, an ALJ considers 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions based on pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. § 404.1529(c). An ALJ may consider whether symptom testimony is consistent with objective medical evidence. *Id*. at *7-8. Even so, a lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). But when coupled with other permissible reasons, objective medical evidence may discount claimant's testimony. *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004)).

The Commissioner asserts that the ALJ provided more than one reason in discounting plaintiff's subjective symptom testimony— improvement with treatment and conservative treatment. (Def. Br. at 7.) But neither of those reasons addresses plaintiff's main arguments here,

Page 9 – OPINION AND ORDER

which concern only her *physical* impairments. Along with finding that "the evidence does not support her allegations regarding the limiting effects, intensity, and frequency of her symptoms[,]" the ALJ briefly mentioned improvement with treatment and conservative treatment. (*See* Tr. 22-24.) That, however, was done to discount plaintiff's allegations related to her *mental* impairments:

> Although the claimant alleged ongoing depression and anxiety, she had mild findings on mental status examination, improved symptoms with treatment and relatively conservative treatment for her mental impairments during the relevant period.

(Tr. 24 (internal citations omitted).)

      The ALJ did not address whether, or to what extent, plaintiff's physical impairments improved with treatment or how her treatment could be considered conservative. The only description the ALJ provided about plaintiff's treatment for her *physical* impairments was that she gets "flares in neck and shoulder pain[,]" which she manages with "CBD cream, cannabis edibles, Ibuprofen, and stretching." (Tr. 23.) Even so, the ALJ did not conclude that such treatments were conservative, nor did she cite any improvement with treatment. The only conclusion the ALJ stated after that sentence was that "[t]he medical evidence of record is not entirely consistent with [plaintiff]'s allegations regarding the limiting effects of her symptoms and the frequency of her migraine headaches." (Tr. 24.) Absent another reason provided by the ALJ to discount plaintiff's allegations surrounding her *physical* impairments, a lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Reddick, 157 F.3d at 722*. Therefore, the ALJ's reasoning is inadequate, and the matter must be remanded for reconsideration.

\\\\\

C.     *Lay Witness Testimony*

Lay witness testimony about a claimant's symptoms is competent evidence that an ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Omitting discussion of lay testimony entirely is error. An exception to that rule applies, however, "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the claimant's mother's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

In addition to plaintiff's own subjective allegations, her mother, Linda B., completed a third-party function report in support of her disability. (Tr. 347-54.) Plaintiff argues that the ALJ erred by failing to give specific and legitimate reasons germane to discount Linda B.'s statements. (Pl. Br. at 18.) The Commissioner argues two grounds to counter plaintiff's argument.

First, the Commissioner argues that the ALJ did not commit legal error because 20 C.F.R. § 404.1520c(d) does not require ALJs to articulate how they consider nonmedical source statements. (Def. Br. at 8.) The Commissioner is mistaken: "Although § 404.1520c(d) states the Commissioner is 'not required to articulate how we consider evidence from nonmedical sources' using the same criteria for medical sources, it does not eliminate the need for the ALJ to articulate his consideration of lay-witness statements and his reasons for discounting those

Page 11 – OPINION AND ORDER

statements." *Joseph M. R. v. Comm'r Soc. Sec. Admin.*, Case No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (quoting 20 C.F.R. § 404.1520c(d)).

Second, the Commissioner argues that the ALJ provided adequate reasoning in discounting Linda B.'s statements because "the described limitations are not entirely consistent with [plaintiff]'s physical exams, diagnostic imaging, or the opinions of Dr. Pollock." (Def. Br. at 9, citing Tr. 26.). Such reasoning, without more, mirrors the analysis of how the ALJ discounted plaintiff's testimony. The court construes this argument as that if the ALJ erred, such error is harmless because plaintiff's mother's statement does not provide any materially different limitations than does plaintiff's testimony, and it thus may be discounted for the same reasons as the ALJ validly discounted plaintiff's testimony. *See Molina v. Astrue*, 674 F.3d 1104, 1118-19 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss lay witness testimony to be prejudicial per se."). This argument, however, fails. As explained above, because the ALJ did not provide legally sufficient reasons to discount plaintiff's subjective symptom testimony, the ALJ erred in failing to consider the lay witness testimony of plaintiff's mother.

D.   *Step-Five Error*

Plaintiff asserts error to the ALJ's step-five finding, contending that the dispositive hypothetical question posed to the VE did not account for all plaintiff's limitations. This argument is well taken. Because the ALJ failed properly to evaluate plaintiff's symptom testimony and the lay witness testimony, the RFC and hypothetical posed to the VE may not have incorporated all of plaintiff's limitations. A hypothetical posed to the VE must be complete

Page 12 – OPINION AND ORDER

and "include all of the claimant's functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." (quotation marks omitted)). Thus, the ALJ erred in relying on the VE testimony that there were significant jobs in the economy that plaintiff could perform from January 26, 2017 to January 1, 2022.

E.    *Remand for Further Proceedings*

Within the court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001) (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine whether a claimant is disabled under the Social Security Act. *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this court. *Garrison*, 759 F.3d at 999. The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider

Page 13 – OPINION AND ORDER

whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. Id. If so, the district court can exercise its discretion to remand for an award of benefits. Id. The district court retains flexibility, however, and need not credit statements as true merely because the ALJ made a legal error. Id. at 408.

The ALJ committed harmful error by failing to provide specific, clear, and convincing reasons to reject plaintiff's symptom testimony and a germane reason to reject the lay witness testimony. The ALJ also failed to provide adequate reasoning as to why the onset date of January 1, 2022, was chosen. After reviewing the record, however, conflicts and ambiguities remain between the improperly rejected testimony and the evidence of the severity and limiting effects of plaintiff's physical impairments— her cerebral palsy, degenerative disc disease, and migraine headaches. In turn, the question of plaintiff's onset date remains. In reviewing plaintiff's case upon remand, the ALJ should be directed to re-examine the evidence which was improperly discounted and, if necessary, call for the help of a medical advisor under SSR 83-20, 1983 WL 31249 (1983) to aid in the determination of plaintiff's onset date. The court remands for further proceedings.

## CONCLUSION

For the above reasons, the court REVERSES the Commissioner's decision that plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

ORDERED: November 25, 2024.

/s/ JEFF ARMISTEAD
JEFF ARMISTEAD
United States Magistrate Judge